Penny BACHELDER; Mark Bachelder, Plaintiffs–Appellants,

v.

AMERICA WEST AIRLINES, INC., Defendant–Appellee.

No. 99–17458.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 2001

Filed Aug. 8, 2001

Code Ann. § 30–14–409

1114

William R. Hobson, Hobson & Ringler, Tempe, Arizona, for the plaintiffs-appellants.

Daniel C. Barr, Brown & Bain, P.A., Phoenix, Arizona, for the defendant-appellee.

Before: REINHARDT, TASHIMA and BERZON, Circuit Judges.

BERZON, Circuit Judge:

Penny Bachelder [1] claims that her employer, America West Airlines, violated the Family and Medical Leave Act of 1993 ("FMLA" or "the Act") when it terminated her in 1996 for poor attendance. The district court granted partial summary judgment to America West, holding that Bachelder was not entitled to the Act's protection for her 1996 absences. Bachelder also appeals from the district court's subsequent finding, after a bench

---

1. Penny's husband, Mark Bachelder, is also a plaintiff and appellant in this case. The district court found that Mark Bachelder has standing to sue because, under Arizona law, he has a community property interest in Penny's earnings. America West has not contested the district court's standing decision. Although we normally must satisfy ourselves that a party has standing before proceeding to the merits of the case, even if the parties have not disputed standing, see *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. Inc.*, 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), the standing question is irrelevant in this case because Penny Bachelder unquestionably has standing to sue, and Mark's presence as a plaintiff has no effect on the relief available. For convenience, we refer in this *opinion only to Penny Bachelder.*

trial, that, in deciding to fire her, America West did not impermissibly consider FMLA-protected leave that she took in 1994 and 1995. This appeal requires us to interpret both the Act and the regulations issued pursuant to it by the Department of Labor.

## I. BACKGROUND

### A. The Family and Medical Leave Act of 1993

 The FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for a family members who are ill, or to care for new babies. 29 U.S.C. § 2612. Congress recognized that, in an age when all the adults in many families are in the work force, employers' leave policies often do not permit employees reasonably to balance their family obligations and their work life. The result, Congress determined, is "a heavy burden on families, employees, employers and the broader society." S.Rep. No. 103–3 at 4, 103d Cong., 2d Sess. (1993). As for employees' own serious health conditions, Congress found that employees' lack of job security during serious illnesses that required them to miss work is particularly devastating to single-parent families and to families which need two incomes to make ends meet. *Id.* at 11–12. As Congress concluded, "it is unfair for an employee to be terminated when he or she is struck with a serious illness and is not capable of working." *Id.* at 11. In response to these problems, the Act entitles covered employees[2] to up to twelve weeks of leave each year for their own serious illnesses or to care for family members, and guarantees them reinstatement after exercising their leave rights. 29 U.S.C. §§ 2612(a)(1), 2614(a)(1).[3]

 The FMLA was the culmination of several years of negotiations in Congress to achieve a balance that reflected the needs of both employees and their employers. While recognizing employees' need for job security at the times when they most needed time off from work, Con-

---

2. The FMLA covers employees who have worked for a covered employer for at least 12 months and for at least 1,250 hours during the previous 12–month period. 29 U.S.C. § 2611(2). A covered employer is "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).

3. 29 U.S.C. § 2612(a)(1) provides:
 Subject to section 2613 of this title [allowing employers to require medical certification], an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:
 (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
 (B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.
29 U.S.C. § 2614(a)(1) provides:
Except as provided in subsection (b) of this section [allowing employers to deny reinstatement to certain highly compensated employees], any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave—
(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
(B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

gress, in enacting the FMLA, also took employers' legitimate prerogatives into account:

It is the purpose of this Act—

(1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity;

(2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition;

(3) to accomplish the purposes described in paragraphs (1) and (2) in a manner that accommodates the legitimate interests of employers.

29 U.S.C. § 2601(b). The twelve-week limitation on employees' protected leave time-protected in the sense that the employee is entitled to reinstatement upon the end of the leave-as well as other provisions in the final Act, demonstrates that Congress wanted to ensure that employees' entitlement to leave and reinstatement did not unduly infringe on employers' needs to operate their businesses efficiently and profitably.[4]

The regulations implementing the twelve-week leave provision reflect this concern for employers' administrative efficiency and convenience needs. *See* Family and Medical Leave Act of 1993, 60 Fed. Reg. 2180, 2199 (Jan. 6, 1995) ("The choice of options was intended to give maximum flexibility for ease in administering FMLA in conjunction with other ongoing employer leave plans, given that some employers establish a 'leave year' and because of state laws that may require a particular result."). Consistent with that concern, the regulations provide employers with a menu of choices for how to determine the "twelve-month period" during which an employee is entitled to twelve weeks of FMLA-protected leave:

An employer is permitted to choose any one of the following methods for determining the "12-month period" in which the 12 weeks of leave entitlement occurs:

(1) The calendar year;

(2) Any fixed 12-month "leave year," such as a fiscal year, a year required by State law, or a year starting on an employee's "anniversary" date;

(3) The 12-month period measured forward from the date an employee's first FMLA leave begins; or,

(4) A "rolling" 12-month period measured backward from the date an employee uses any FMLA leave.

29 C.F.R. § 825.200(b). This "leave year" regulation is at the heart of Bachelder's appeal.

## B. Facts

Bachelder began working for America West as a customer service representative

---

4. Versions of the legislation defeated in earlier Congresses would have entitled employees to longer periods of protected leave. *See* H.R. 4300, 99th Cong. (1986) (entitling employees to up to 26 weeks of leave in a twelve-month period for the employee's own serious health condition and up to 18 weeks in a two-year period for the birth or adoption of a child or to care for an ill family member); H.R. 925, 100th Cong. (1988) (entitling employees to up to 10 weeks of leave in a two-year period for the birth or adoption of a child or to care for an ill family member and up to 15 weeks of leave in a twelve-month period for the employee's own serious health condition).

Similarly, the earlier, unsuccessful family leave bills covered more employers than the law enacted in 1993. *Compare* H.R. 4300 § 101 (covering employers with 15 or more employees); H.R. 925 § 101(5)(A) (covering employers with 50 or more employees for the first three years the legislation would have been in effect, and thereafter, employers with 35 or more employees); *with* 29 U.S.C. § 2611(4)(A) (covering employers with 50 or more employees).

in 1988. From 1993 until her termination in 1996, she was a passenger service supervisor, responsible for several gates at the Phoenix Sky Harbor Airport.

From 1994 to 1996, Bachelder was often absent from work for various health and family-related reasons. In 1994, she took five weeks of medical leave to recover from a broken toe, and in mid–1995, she took maternity leave for approximately three months. It is undisputed that these two leaves were covered by, and protected by, the FMLA. In addition to these extended absences, Bachelder also called in sick several times in 1994 and 1995.

On January 14, 1996, one of America West's managers had a "corrective action discussion" with Bachelder regarding her attendance record. Among the absences that concerned the company were several occasions on which Bachelder had called in sick and the 1994 and 1995 FMLA leaves. Bachelder was advised to improve her attendance at work and required to attend pre-scheduled meetings at which her progress would be evaluated.

In February 1996, Bachelder was absent from work again for a total of three weeks. During that time, she submitted two doctor's notes to America West indicating her diagnosis and when she could return to work. Bachelder's attendance was flawless in March 1996, but in early April, she called in sick for one day to care for her baby, who was ill. Right after that, on April 9, Bachelder was fired. The termination letter her supervisor prepared gave three reasons for the company's decision:

(1) Bachelder had been absent from work 16 times since being counseled about her attendance in mid-January; (2) she had failed adequately to carry out her responsibilities for administering her department's Employee of the Month program; and (3) her personal on-time performance and the on-time performance in the section of the airport for which she was responsible were below par.

In due course, Bachelder filed this action, alleging that America West impermissibly considered her use of leave protected by the FMLA in its decision to terminate her.[5] In response, America West maintained that it had not relied on FMLA-protected leave in firing Bachelder, because none of her February 1996 absences were protected by the Act, and because her 1994 and 1995 FMLA leaves did not factor into its decision. None of Bachelder's February 1996 absences were covered by the Act, argued America West, because the company used the retroactive "rolling" year method-the fourth of the four methods permitted by the leave year regulation-to calculate its employees' eligibility for FMLA leave. If that method was used, Bachelder had exhausted her full annual allotment of FMLA leave as of June 1995,[6] and was entitled, according to the company, to no more such leave until twelve months had elapsed from the commencement of her 1995 maternity leave. Therefore, America West maintained, Bachelder's February 1996 absences could not have been protected by the Act.

Bachelder countered that according to the regulations implementing the FMLA, she was entitled to have her leave eligibility calculated by the method most favorable

---

**5.** Bachelder also asserted various claims under the Americans with Disabilities Act, Title VII, and the Arizona Civil Rights Act. The district court granted America West's motion for summary judgment as to all of these claims, and Bachelder has not appealed those rulings.

**6.** Whether Bachelder in fact exhausted her full allotment of FMLA leave in 1995 is disputed. We have no need to resolve this dispute, as, under the applicable legal standards, the length of the 1995 leave does not matter.

to her. Under a calendar year method of calculating leave eligibility, she contended, her February 1996 absences were protected by the FMLA, and America West had violated the Act by relying on those absences in deciding to fire her.

The district court granted America West's motion for summary judgment in part, deciding that none of Bachelder's 1996 absences were protected by the FMLA. The court nonetheless determined that a factual dispute remained as to whether America West had impermissibly considered Bachelder's 1994 medical leave and her 1995 maternity leave, which all agreed were covered by the FMLA, in its decision to fire her. Because it found that Bachelder had failed timely to request a jury trial, the court submitted this issue to a bench trial. Following the trial, the district court found that America West had not considered Bachelder's 1994 and 1995 FMLA-protected leaves in making the firing decision, and entered judgment for America West. Bachelder appeals from both the summary judgment and the judgment following the bench trial.

## II. DISCUSSION

### A. Prohibition on Considering Use of FMLA Leave in Making Employment Decisions

 The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave. 29 U.S.C. §§ 2612(a), 2614(a).[7] Congress intended that these new entitlements would set "a minimum labor standard for leave," in the tradition of statutes such as "the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment." S.Rep. No. 103–3 at 4.

 Implementing this objective, Congress made it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. 29 U.S.C. § 2615(a)(1).[8] The regulations explain that this prohibition encompasses an employer's consideration of an employee's use of FMLA-covered leave in making adverse employment decisions:

> [E]mployers *cannot use the taking of FMLA leave as a negative factor in employment actions,* such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c) (emphasis added). We find, for the following reasons, that this rule is a reasonable interpretation of

---

**7.** The FMLA also entitles employees to retain any employer-paid health benefits while using FMLA-protected leave, subject to the proviso that if the employee fails to return to work at the end of his or her leave, the employer may recover from the employee the premiums paid for maintaining coverage during the employee's absence. 29 U.S.C. § 2614(c).

**8.** It is also unlawful:

to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful

by the Act, 29 U.S.C. § 2615(a)(2), or:

to discharge or in any other manner discriminate against any individual because such individual—

(1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;

(2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

(3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

29 U.S.C. § 2615(b).

the statute's prohibition on "interference with" and "restraint of" employee's rights under the FMLA.[9]

■ Section 2615's language of "interference with" and "restraint of" the exercise of the rights it guarantees to employees largely mimics that of § 8(a)(1) of the National Labor Relations Act. *See* 29 U.S.C. § 158(a)(1) (providing that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by § 7 of the NLRA). Like the NLRA, the FMLA entitles employees to engage in particular activities—under the FMLA, taking leave from work for FMLA-qualifying reasons—that will be shielded from employer interference and restraint. *Compare* 29 U.S.C. § 157 (endowing employees with the rights "to self-organization, to form, join, or assist labor organizations, to bargain collectively . . ., and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and . . . the right to refrain from any or all of such activities") *with* 29 U.S.C. § 2612 (providing that eligible employees "shall be entitled to a total of 12 workweeks of leave during any 12–month period" for qualifying reasons).

■ Because the FMLA's language so closely follows that of the NLRA, the courts' interpretation of § 8(a)(1) of the NLRA helps to clarify the meaning of the statutory terms "interference" and "restraint." *Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (per cu-

riam) (similarity of statutory language is strong indication that statutes should be interpreted in the same manner). The Supreme Court has held that, for example, an employer's award of preferential seniority rights to striker replacements interferes with employees' rights under the NLRA, *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 231, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963) (observing that the practice's "destructive impact upon the strike and union activity cannot be doubted"), as does an employer's threat to shut down its plant in retaliation if its employees should elect to form a union. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 616–20, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Similarly, this circuit has held-giving just a few examples-that literature distributed by an employer indicating that job losses will be inevitable if employees vote to form a union "interferes" with employees' rights, *NLRB v. Four Winds Indus. Inc.*, 530 F.2d 75, 78–79 (9th Cir.1976), as does an employer's surveillance of its employees meeting with a union organizer outside the workplace. *California Acrylic Indus. Inc. v. NLRB*, 150 F.3d 1095, 1099 (9th Cir.1998).

■ The basis for these holdings, as *California Acrylic* stated, is that "the courts have long recognized that employers violate section 8(a)(1)['s prohibition on interfering with or restraining employee rights] by engaging in activity that tends to chill an employee's freedom to exercise his [ ] rights." *Id.* For, "[a] protected activity acquires a precarious status if innocent employees can be discharged [for]

---

9. Congress authorized the Department of Labor to promulgate regulations implementing the FMLA. 29 U.S.C. § 2654. The department's reasonable interpretations of the statute are therefore entitled to deference under *Chevron USA Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1191 (9th Cir.2000) (agency's interpretation of statute pursuant to statutory delegation of authority is entitled to *Chevron* deference); *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 5 (1st Cir.1998) (Labor Department's FMLA regulations were promulgated pursuant to statutory delegation and are entitled to *Chevron* deference).

engaging in it[.] ... It is the tendency of those discharges to weaken or destroy the [ ] right that is controlling." *NLRB v. Burnup & Sims, Inc.*, 379 U.S. 21, 23–24, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964).

█ As a general matter, then, the established understanding at the time the FMLA was enacted was that employer actions that deter employees' participation in protected activities constitute "interference" or "restraint" with the employees' exercise of their rights. Under the FMLA as under the NLRA, attaching negative consequences to the exercise of protected rights surely "tends to chill" an employee's willingness to exercise those rights: Employees are, understandably, less likely to exercise their FMLA leave rights if they can expect to be fired or otherwise disciplined for doing so. The Labor Department's conclusion that employer use of "the taking of FMLA leave as a negative factor in employment actions," 29 C.F.R. § 825.220(c), violates is the Act is therefore a reasonable one.

█ The pertinent regulation uses the term "discrimination" rather than "interfere" or "restrain" in introducing the "negative factor" prohibition. *See* 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(c).[10] In the case before us and in similar cases, the issue is one of *interference* with the exercise of FMLA rights under § 2615(a)(1), not retaliation *or* discrimination: Bachelder's claim does not fall under the "anti-retaliation" or "anti-discrimination" provision of § 2615(a)(2), which prohibits "*discriminat[ion]* against any individual for

opposing any practice made unlawful by the subchapter". (emphasis added); nor does it fall under the anti-retaliation or anti-discrimination provision of § 2615(b), which prohibits discrimination against any individual for instituting or participating in FMLA proceedings or inquiries. By their plain meaning, the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action is, instead, covered under § 2615(a)(1), the provision governing "Interference [with the] Exercise of rights." *See Diaz v. Ft. Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir.1997) (holding that a claim by a former employee that he was denied the use of FMLA leave is a claim of a substantive right, covered under (a)(1), and not (a)(2); *Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1148 (8th Cir.2001) (same)).

█ The regulation we apply in this case, 29 C.F.R. 825.220, implements all the parts of 29 U.S.C. § 2615. As noted, the particular provision of the regulations prohibiting the use of FMLA-protected leave as a negative factor in employment decisions, 29 C.F.R. 825.220(c), refers to "discrimination," but actually pertains to the "interference with the exercise of rights" section of the statute, § 2615(a)(1), not the anti-retaliation or anti-discrimination sections, §§ 2615(a)(2) and (b). While the unfortunate intermixing of the two different statutory concepts is confusing, there is no doubt that 29 C.F.R. 825.220(c)

**10.** Some of the case law applying § 2615 erroneously uses the term "discriminate" to refer to interference with exercise of rights claims. This semantic confusion has led many courts to apply anti-discrimination law to interference cases, instead of restricting the application of such principles—assuming they are applicable to FMLA at all—to "anti-retaliation" or "anti-discrimination" cases under §§ 2615(a)(2) and (b). *See Morgan v. Hilti,*

*Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997); *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 160–61 (1st Cir.1998); *King v. Preferred Tech. Group,* 166 F.3d 887, 891 (7th Cir. 1999); *Chaffin v. John H. Carter Co.,* 179 F.3d 316, 319 (5th Cir.1999); *Gleklen v. Democratic Congressional Campaign Comm.,* 199 F.3d 1365, 1368 (D.C.Cir.2000); *Brungart v. Bell-South Telecommunications, Inc.,* 231 F.3d 791, 798 (11th Cir.2000).

serves, at least in part, to implement the interference with the exercise of rights section of the statute. *See* 29 C.F.R. 825.220(b) ("Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act.").

■■■ Consequently, our analysis is fairly uncomplicated. Much as it should be obvious that the "FMLA is not implicated and does not protect an employee against disciplinary action based upon [ ] absences" if those absences are not taken for one of the reasons enumerated in the Act, *Rankin,* 246 F.3d, at 1147 (8th Cir.2001); *see also Marchisheck v. San Mateo County,* 199 F.3d 1068 (9th Cir.1999) (determining that a terminated employee had no cause of action under the FMLA because the absences for which she was fired were not protected by the Act); *Diaz* 131 F.3d, at 713–14 (7th Cir.1997) (same), the FMLA *is* implicated and does protect an employee against disciplinary action based on her absences if those absences are taken for one of the Act's enumerated reasons. *See, e.g., Victorelli v. Shadyside Hosp.,* 128 F.3d 184, 190–91 (3d Cir.1997) (reversing grant of summary judgment for the employer where there was a triable issue whether the absence that triggered the plaintiff's termination was covered by the FMLA); *Rankin,* 246 F.3d at 1148–49; *Price v. City of Ft. Wayne,* 117 F.3d 1022, 1023–27 (7th Cir.1997).

■■■ America West contends for quite a different approach, arguing that we should apply a *McDonnell Douglas*-style shifting burden-of-production analysis, familiar from anti-discrimination law, to determine whether the company illegally "re-taliated" against Bachelder for using leave that was protected by the FMLA. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (the *McDonnell Douglas* framework only affects the burden of production, not the burden of persuasion). The *McDonnell Douglas* approach is inapplicable here, however.

■■■ The regulation promulgated by the Department of Labor, 29 C.F.R. 825.220(c) plainly prohibits the use of FMLA-protected leave as a negative factor in an employment decision. In order to prevail on her claim, therefore, Bachelder need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both. *See e.g., Lambert v. Ackerley,* 180 F.3d 997 (9th Cir.1999) (en banc) (using both direct and circumstantial evidence to prove prohibited act under the Fair Labor Standards Act); *Davis Supermarkets, Inc. v. NLRB,* 2 F.3d 1162 (D.C.Cir.1993) (using both direct and circumstantial evidence to prove unfair labor practice under NLRA); *Reeves,* 530 U.S. at 142–43, 120 S.Ct. 2097 (2000) (circumstantial evidence, including evidence that the employer's explanation of its decision was false, can meet an employee's burden of persuasion in a Title VII case). No scheme shifting the burden of production back and forth is required.[11]

In the case before us, there is direct, undisputed evidence of the employer's mo-

11. In contrast, the "anti-retaliation" provisions of FMLA prohibit "[discrimination] against any individual for opposing any practice made unlawful by this subchapter," (a)(2), and discrimination against any individual for instituting or participating in FMLA proceedings, (b), prohibitions which are not at issue in this case. 29 U.S.C. § 2615(a)(2). Whether or not the *McDonnell Douglas* anti-discrimination approach is applicable in cases involving the "anti-retaliation" provisions of FMLA, is a matter we need not consider here.

tives: America West told Bachelder when it fired her that it based its decision on her sixteen absences since the January 1996 corrective action discussion. If those absences were, in fact, covered by the Act, America West's consideration of those absences as a "negative factor" in the firing decision violated the Act. The pivotal question in this case, then, is only "whether the plaintiff has established, by a preponderance of the evidence, that [s]he is entitled to the benefit [s]he claims." *Diaz*, 131 F.3d at 713.

## B. FMLA Coverage of Bachelder's 1996 Leave

### 1. *Calculating FMLA Leave Eligibility*

Construing the statutory language and the Department of Labor's regulations, the district court held that Bachelder's February 1996 absences were not protected by the FMLA. We conclude that the district court's understanding of the statutory and regulatory scheme was erroneous.

 The "leave year" regulation, 29 C.F.R. § 825.200, allows employers, at their option, to calculate the twelve-month period in which an employee is limited to twelve weeks of protected leave by one of four methods. Under the two fixed-year methods, the employee could use up to twelve weeks of leave at any time during the twelve-month period selected by the employer. 29 C.F.R. § 825.200(c).[12] For example, an employee whose employer had adopted the calendar year method could, consistently with the Act, "take 12 weeks of leave at the end of the year and 12 weeks at the beginning of the following

year." *Id.* On January 1, this employee would be entitled to a full bank of FMLA-protected leave, no matter how recently, or how much, she had exercised her entitlement to protected leave the previous year.

 Under the rolling method, "each time an employee takes FMLA leave the remaining leave entitlement would be any balance of the 12 weeks which has not been used during the immediately preceding 12 months." *Id.* Thus, if an employee used her full allotment of twelve weeks of FMLA leave starting on February 1, she would be entitled to no additional days of FMLA leave until February 1 of the following year.

 The FMLA "leave year" regulation, while allowing employers flexibility in deciding how to comply with the Act, also includes various safeguards for employees. First, the employer must apply its chosen calculating method consistently to all employees. 29 C.F.R. § 825.200(d)(1). Second, if the employer has failed to select a calculating method, the regulations state that the method "that provides the most beneficial outcome for the employee will be used." 29 C.F.R. § 825.200(e). By preventing employers from calculating FMLA leave eligibility in their own favor on an ad hoc, employee-by-employee basis, the "leave year" regulation encourages the employer to choose its calculating method prospectively. By doing so, the regulation not only prevents unfairness to employees through retroactive manipulation of the "leave year," but also encourages a system under which both employees and employers can plan for future leaves in an orderly fashion.[13]

---

**12.** The calculating method based on the employee's first leave request is a hybrid method, unique to each employee. *See* 29 C.F.R. § 825.200(c) ("Under the method in paragraph (b)(3) of this section, an employee would be entitled to 12 weeks of leave during the year beginning on the first date FMLA

leave is taken; the next 12-month period would begin the first time FMLA leave is taken after completion of any previous 12-month period.").

**13.** For example, parents may want to plan the time of an adoption, or of elective surgery, to

## 2. *Notice Requirement*

 The regulations allow employers to choose among four methods for calculating their employees' eligibility for FMLA leave, but they do not specifically state how an employer indicates its choice. America West contends, correctly, that the FMLA's implementing regulations do not expressly embody a requirement that employers inform their employees of their chosen method for calculating leave eligibility. The regulations nonetheless plainly contemplate that the employer's selection of one of the four calculation methods will be an open one, not a secret kept from the employees, the affected individuals.

First, the regulations require covered employers who provide "any written guidance to employees concerning employee benefits or leave rights, such as in an employee handbook," to "incorporate information on FMLA rights and responsibilities *and the employer's policies regarding the FMLA*" therein. 29 C.F.R. § 825.301(a)(1) (emphasis added).[14] Because America West has an employee handbook, it is bound by § 825.301(a)(1).

Scattered throughout the Act and the regulations are choices for employers in how to comply with the statute. *See, e.g.,* 29 U.S.C. § 2612(d)(2) (permitting employ-

ers to require employees to use their accrued paid leave time for FMLA-qualifying purposes); 29 C.F.R. § 825.207(b) (same); 29 U.S.C. § 2613(a)(4) (permitting employers to require employees to provide medical certification that the employee can return to work after FMLA-qualifying leave); 29 C.F.R. § 825.310 (same). Section 825.301(a)(1), by its terms, requires employers to notify employees of the choices they have made. As the Department of Labor explained in announcing § 825.301(a)(1):

> The purpose of this provision is to provide employees the opportunity to learn from their employers of the manner in which that employer intends to implement FMLA and what company policies and procedures are applicable so that employees may make FMLA plans fully aware of their rights and obligations. It was anticipated that to some large degree these policies would be peculiar to that employer.

60 Fed.Reg. at 2219.

The rule allowing employers a choice of calculating methods is one example of the flexibility afforded to employers in complying with the FMLA. Section 825.301(a)(1) requires employers to notify their employees of this choice, just as it requires employers to notify their employees of other policies adopted to comply with the Act.[15]

coincide with the availability of FMLA leave under their employers' chosen calculation method. Similarly, an employer who chooses in advance a calendar year method is assured that no employee can take more than twelve weeks of FMLA leave in the calendar year, and can make staffing plans accordingly.

**14.** Employers who do not have employee handbooks must "provide written guidance to an employee concerning all the employee's rights and obligations under the FMLA." 29 C.F.R. § 825.301(a)(2).

**15.** America West's argument that it satisfied any notice requirements by complying with the FMLA's general posting rule is unavailing. Covered employers are required conspicuous-

ly to post a notice "explaining the Act's provisions and providing information concerning the procedures for filing complaints of violations of the Act with the Wage and Hour Division" of the Labor Department. 29 C.F.R. § 825.300(a). The sample poster that satisfies this requirement does not mention the methods by which employers shall calculate leave eligibility. 29 C.F.R. § 825 App. C. But to conclude that complying with the posting rule satisfied *all* of an employer's notice obligations under the Act, as America West argues, would render a nullity the subsequent rule, 29 C.F.R. § 825.301, describing the "other notices to employees ... required of employers under the FMLA." Moreover, the Labor Department explicitly indicated that compliance with the posting rule would not

Moreover, the "leave year" rule expressly requires notice in particular situations. Although these notice requirements do not explicitly require that employees be informed of the initial selection, they would be meaningless if the regulations as a whole allowed employers to conceal the initial selection from their employees.

For example, the "leave year" regulation provides that "[a]n employer *wishing to change to another alternative* [for calculating employees' FMLA leave eligibility] is required to give at least 60 days notice to all employees, and the transition must take place in such a way that the employees retain the full benefit of 12 weeks of leave under whichever method affords the greatest benefit to the employee." 29 C.F.R. § 825.200(d)(1) (emphasis added). The 60–day rule demonstrates that employees are entitled to act in reliance on their employer's choice of a calculating method in, for example, scheduling elective surgery or deciding which spouse will stay home to care for a seriously ill family member. Employees cannot reasonably act in reliance on an employer's initial policy choice if that choice was kept secret from them. Moreover, notifying employees of a *change* of methods is only meaningful if they are aware that another method was previously in use. For both these reasons, the regulations clearly contemplate that the employees not be kept in the dark concerning their employer's initial selection.

By the same token, "[i]f an employer fails to select one of the options, ... [t]he employer may subsequently select an option only by providing the 60–day notice to all employees of the option the employer intends to implement." 29 C.F.R. § 825.200(e). Employees would not realize that their employer had "fail[ed] to select" a calculating method, such that they would be entitled to notice of a belated selection, unless the employer had a duty to provide timely information initially regarding its selection. Rather, the employer's "failure to select" a method is best understood to include the failure to inform employees of its selection.

The only sensible reading of the regulations taken as a whole, therefore, is that an employer's "selection" of a calculating method must be an open rather than a secret act, necessarily carrying with it an obligation to inform its employees thereof.[16] That the Labor Department so understood its own regulations is confirmed by the Department's statement, when announcing the regulations, that "[e]mployers must inform employees of the applicable method for determining FMLA leave entitlement when informing employees of their FMLA rights." 60 Fed.Reg. at 2200.

Further, as to any leave request made before the employer has thus selected a calculating method, the employer may properly be held to the rule that "the option that provides the most beneficial outcome for the employee" shall be used. 29 C.F.R. § 825.200(e). To hold otherwise would force employees to bear the risk of their employer's failure properly to inform them of the calculating method that will be used.

suffice to meet all of the employer's notice requirements. *See* 60 Fed.Reg. at 2219 ("The posting of the notice [required by § 825.300] is but one of the notice requirements applicable to employers.").

**16.** We note that no negative implication arises from the fact that the regulations are explicit in requiring 60–day notices in the event of a change in or failure to implement a leave year policy. In both of these instances, the nub of the regulation is the requirement that there be a 60–day period before a newly selected policy can take effect. A 60 day *advance* notice is not implicit in the "selection" requirement as read against the regulations' more general notice provisions and therefore had to be spelled out.

We therefore conclude that an initial selection of a method for calculating the leave year must be an open-not a secret-one before it can be applied to an employee's disadvantage.

### 3. Adequacy of Notice

The question remains whether America West adequately notified its employees that it had chosen the retroactive rolling "leave year" calculation method. America West contends, and the district court agreed, that, because its employee handbook states that "employees are entitled to up to twelve calendar weeks of unpaid [FMLA] leave within any twelve month period," it provided sufficient notice to its employees that it uses the "rolling method" for calculating leave eligibility. We disagree.

This statement from the America West handbook does nothing more than parrot the language of the Act. See 29 U.S.C. § 2612(a)(1) (providing that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period"). Pursuant to the authority granted to it by Congress, however, the Labor Department determined that the "rolling method" is *not* the only system permitted by the statute; the Department interpreted the statutory language to allow for three other calculating methods as well. So, the Department construed the statute's reference to "any 12-month period" to include a variety of differently-calculated 12-month periods, as chosen by the employer, thereby promoting employer flexibility. The Department then proceeded to enumerate four methods of determining FMLA leave eligibility, each of which, it necessarily determined, was consistent with the statute's "any 12-month period" language.[17]

True, in the preamble to its final rule, the Labor Department noted that the rolling method "most literally tracks" the Act's language. See 60 Fed.Reg. at 2200 ("While many comments were received opposing [the rolling] method, it has been retained as one of the available options because it is the one method that most literally tracks the statutory language."). But the very fact that the regulation permits employers to use any of four calculating methods is fatal to America West's argument: Because the statute can reasonably be read to allow the four different methods spelled out, merely parroting the statutory language cannot possibly inform employees of the method the employer has chosen. By paraphrasing the statutory language, in other words, America West has done no more than announce its intention to comply with the Act.

Because choosing a calculating method carries with it an obligation to inform employees of that choice and America West has failed to fulfill this obligation, it has "fail[ed] to select" a calculating method. 29 C.F.R. § 825.200(e). Thus, "the option that provides the most beneficial outcome for the employee" must be used to determine whether Bachelder's 1996 absences were covered by the FMLA. *Id.*

The calendar year method provides the most favorable outcome to Bachelder. 29 C.F.R. § 825.200(b)(1). Under this approach, it is immaterial that Bachelder had utilized her full allotment of FMLA-protected leave between April and June 1995 (and it is unnecessary for us to resolve the dispute whether she used every single day of FMLA leave to which she was entitled

---

17. Neither party suggests that there is any question concerning the validity of the regulation's interpretation of the statute to include various different twelve-month periods. In light of the statute's use of the term "any," we also can perceive no basis for limiting employers to the single 12-month rolling period, rather than one of the other options enumerated by the regulation.

in 1995). Because she began 1996 with a fresh bank of FMLA-protected leave, Bachelder's February 1996 absences were covered by the Act.[18]

## C. America West's Additional Arguments

■ America West nonetheless contends that "Bachelder's termination could not have been for her exercise of FMLA rights in 1996 because . . . both she and [America West] believed she had exhausted all of her FMLA leave." Whether either America West or Bachelder believed at the time that her February 1996 absences were protected by the FMLA is immaterial, however, because the company's liability does not depend on its subjective belief concerning whether the leave was protected.

■ First, the employer's good faith or lack of knowledge that its conduct violated the Act is, as a general matter, pertinent only to the question of damages under the FMLA, not to liability. An employer who violates the Act is liable for damages equal to the amount of any lost wages and other employment-related compensation, as well as any actual damages sustained as a result of the violation, such as the cost of providing care, and interest thereon. 29 U.S.C. § 2617(a)(1)(A). The employer is also liable for liquidated damages equal to the amount of actual damages and interest, unless it can prove that it undertook in good faith the conduct that

violated the Act *and* that it had "reasonable grounds for believing that [its action] was not a violation" of the Act. 29 U.S.C. § 2617(a)(1)(A)(iii). Under such circumstances, it is within the district court's discretion to limit damages to only the amount of actual damages and interest thereon. *Id.* An employer who acts in good faith and without knowledge that its conduct violated the Act, therefore, is still liable for actual damages regardless of its intent.[19]

■ Second, it is the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the Act. Employees must notify their employers in advance when they plan to take foreseeable leave for reasons covered by the Act, *see* 29 U.S.C. § 2612(e), and as soon as practicable when absences are not foreseeable. *See* 29 C.F.R. § 825.303(a). Employees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply:

> The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed [for a qualifying reason]. The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. In the case of medical conditions, the employer may find it

---

**18.** To establish that her February 1996 absences qualify as FMLA leave, Bachelder also had to have suffered from a "serious health condition" and have been employed by America West for at least 1,250 hours in the preceding twelve months. 29 U.S.C. § 2611(2) (defining "eligible employee"). America West has not disputed that these conditions were met.

**19.** That an employer's good-faith mistake as to whether its action violates the law is not a defense to liability is, similarly, commonplace

in other areas of employment law. *See, e.g., Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (holding that an employer's actions violating the Age Discrimination in Employment Act were taken in good faith and without knowledge of the violation barred an award of liquidated damages, but had no effect on liability); *Burnup & Sims,* 379 U.S. at 22–23, 85 S.Ct. 171 (employer's good faith is not a defense to liability for interfering with employees' rights under § 8(a)(1) of the NLRA).

necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave.

29 C.F.R. § 825.302(c); *see also Price,* 117 F.3d at 1026 ("The FMLA does not require that an employee give notice of a desire to invoke the FMLA. Rather, it requires that the employee give notice of *need* for FMLA leave.") (emphasis in original); *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 761–62 (5th Cir.1995). In short, the employer is responsible, having been notified of the reason for an employee's absence, for being aware that the absence may qualify for FMLA protection.[20]

Bachelder provided two doctor's notes to America West regarding her absences in February 1996.[21] The company was therefore placed on notice that the leave might be covered by the FMLA, and could have inquired further to determine whether the absences were likely to qualify for FMLA protection.

 Finally, America West argues that Bachelder failed to show that the other two reasons it initially put forward for firing her-her failure adequately to administer the Employee of the Month program and her unsatisfactory on-time performance-were pretextual. As we have already explained, however, there is no room for a *McDonnell Douglas* type of pretext analysis when evaluating an "interference" claim under this statute. The question here is not whether America West had additional reasons for the discharge, but whether Bachelder's taking of the 1996 FMLA-protected leave was used as a negative factor in her discharge. We know that the taking of the leave for the period in question was indeed used as a negative factor because America West so announced at the time of the discharge and does not deny that fact now. Moreover, America West does not seriously contend that, even though it considered an impermissible reason in firing Bachelder, it would have fired her anyway for the other two reasons alone. Even had it made such an argument, of course, the regulations clearly prohibit the use of FMLA-protected leave as a negative factor *at all.* Therefore no further inquiry on the question whether America West violated the statute in discharging Bachelder is necessary.[22]

---

**20.** In contrast, where an employee completely fails to give notice that she is absent for a potentially FMLA-qualifying reason, several circuits have held that the absence is not protected by the Act. *See, e.g., Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1207 (11th Cir.2001) (affirming summary judgment for employer where there was no evidence that the employee told his supervisor he was leaving work for a medical reason); *Brungart,* 231 F.3d at 800 (holding that the employer was not liable because the decisionmaker who fired the plaintiff did not know that she was about to take leave at all, protected or otherwise); *Bailey v. Amsted Indus. Inc.,* 172 F.3d 1041 (8th Cir.1999) (affirming judgment for the employer because it lacked notice that plaintiff's frequent absences were for medical reasons).

**21.** Although there is some dispute whether Bachelder's supervisors received both of these doctor's notes, the record shows that her February 1996 absences were recorded in her personnel file as "Medical Leave of Absence," a designation that, according to her supervisor's testimony, applied to leaves taken for medical reasons.

**22.** We note that it appears fairly clear in any event that Bachelder would *not* have been fired had she not taken the protected leave. The supervisor who recommended that Bachelder be fired admitted in his deposition that "the basis for her termination, for the most part, was availability," and characterized her on-time performance and Employee of the Month deficiencies as "minor performance issues." Moreover, America West's witnesses testified at the trial that Bachelder's attendance was the primary reason for firing

### III. CONCLUSION

Because we hold that Bachelder's February 1996 absences were protected by the FMLA, and because America West used these absences as a negative factor in its decision to fire her, we reverse the district court's grant of summary judgment for America West, direct the court to grant Bachelder's cross-motion for summary judgment as to liability, and remand for further proceedings.[23]

REVERSED and REMANDED.

her, and the district court ultimately found that Bachelder failed to contradict their testimony that "the likely reason for her termination . . . was because of her continued unavailability in 1996."

**23.** The district court's finding after the bench trial that America West did not impermissibly consider Bachelder's 1994 and 1995 FMLA-protected leaves in deciding to fire her appears to be supported by the record, and the court's refusal to grant Bachelder's inadvertently untimely jury demand was correct. *See Pacific Fisheries Corp. v. HIH Cas. & Gen. Ins. Ltd.,* 239 F.3d 1000, 1002 (9th Cir.2001). In light of our holding on the 1996 absences, however, these two rulings are beside the point.