NOT FOR PUBLICATION

FILED

MAY 20 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRANDY WILLIAMS, | No. 18-15778 |
| Plaintiff/Appellant, | D.C. No. 2:15-cv-01744-DJH |
| v. | |
| G&K SERVICES, INC., | MEMORANDUM* |
| Defendant/Appellee. | |

Appeal from the United States District Court
for the District of Arizona, Phoenix
Diane J. Humetewa, District Judge, Presiding

Submitted May 14, 2019**
San Francisco, California

Before: WALLACE and IKUTA, Circuit Judges, and MOLLOY,*** District
Judge.

Brandy Williams appeals from the district court's order granting summary

judgment in favor of her former employer G&K Services, Inc., on her claims for

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision
without oral argument. See Fed. R. App. P. 34(a)(2).

*** The Honorable Donald W. Molloy, United States District Judge for
the District of Montana, sitting by designation.

1

(1) interference under the Family Medical Leave Act ("FMLA"), (2) failure to accommodate under the Americans with Disabilities Act ("ADA"), and (3) discriminatory discharge under the ADA. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

1. To prevail on her FMLA interference claim, Williams must "prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001). Because the FMLA does not prohibit disciplinary action based on absences that are not protected, *id.*, the issue is whether G&K Services terminated Williams based on her FMLA-protected absences—those occurring on or after August 5, 2013. To support her claim, Williams argues (1) her termination was based on negative performance reviews, which were at least in part based on protected absences, (2) her supervisor Rachael Siggerud was frustrated with her time off for medical appointments, and (3) less than three months elapsed between her FMLA leave request and her termination.

Siggerud was the only person involved in Williams's termination who knew about the FMLA leave. According to Siggerud, Williams's performance issues, which were documented well before she requested FMLA leave, were based on her tardiness to several meetings, her failure to attend meetings to which she RSVP'd, and her overall lack of communication surrounding her availability, rather than her

2

medical absences. That other employees might have complained about Williams's protected absences is only relevant to the extent Siggerud relied on those specific complaints in firing Williams. But Siggerud consistently distinguished between Williams's performance issues and medical needs and there is no basis to infer that Siggerud relied on anything other than Williams's performance issues in terminating her. Williams's argument that Siggerud was frustrated with her FMLA request is also unavailing. Williams's only evidence is an out-of-context statement from an e-mail that Siggerud "would like to manage this request very closely." Siggerud's email may show she was frustrated with Williams's performance, but it does not support an inference that she was frustrated with Williams's FMLA leave. Finally, while temporal proximity may be evidence an employer improperly considered protected activity when making an adverse employment decision, it must be considered in light of the "surrounding circumstances." *Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003). Here, it is undisputed that Siggerud accommodated Williams's medical needs for months and suggested Williams apply for FMLA leave in the first place. Accordingly, summary judgment for G&K Services was proper on Williams's FMLA interference claim.

2. The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). It is undisputed that Siggerud allowed

3

Williams all the time off she needed for medical appointments—the accommodation Williams requested as early as December 2012. Accordingly, there is no genuine dispute of material fact that G&K Services met its obligations under the ADA to offer Williams reasonable accommodations.

3. The *McDonnell Douglas*[1] burden shifting framework governs claims for unlawful discharge in violation of the ADA's anti-discrimination provisions. *See Snead v. Metro. Prop. & Cas. Ins.*, 237 F.3d 1080, 1093 (9th Cir. 2001). Assuming Williams has established a prima facie case of discrimination, the burden shifts to G&K Services to provide a legitimate, nondiscriminatory reason for terminating her. *Id.* The burden then shifts back to Williams to prove that the proffered nondiscriminatory reasons are pretextual. *Id.* at 1093–94. G&K Services offers three nondiscriminatory reasons for terminating Williams: (1) its Northwest region was overstaffed, (2) she lacked the same experience as the region's other two HR generalists, and (3) she was the only one of the three with performance issues.

It is undisputed that G&K Services never replaced Williams, that it terminated a second HR generalist in 2014, and that it has since staffed the Northwest region with only one position. Further, Williams does not dispute that she lacked the same experience as the region's other HR generalists, and she does

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

4

not offer any evidence they had performance issues. While Williams's pay was increased after the HR reorganization, it was a standard increase that was not "merit based." And, though she received some positive feedback in her recruitment role, was not placed on a Performance Improvement Plan, and some of the performance criteria might have been subjective, those facts do not create a material dispute that her performance issues were pretextual when Siggerud expressed the same concerns on multiple occasions over three months and Williams admitted to being late to meetings, missing a scheduled phone call, and having absences unrelated to her medical needs.

**AFFIRMED.**