[Cite as *State ex rel. Professionals Guild of Ohio v. State Emp. Relations Bd.*, 2020-Ohio-3289.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Professionals Guild of Ohio, | : | |
| Relator, | : | |
| v. | : | No. 18AP-334 |
| [Ohio] State Employment Relations Board et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 11, 2020

**On brief:** *James E. Melle,* for relator.

**On brief:** *Dave Yost,* Attorney General, *Georgia L. Verlaney,* and *Tracy M. Nave,* for respondent State Employment Relations Board.

**On brief:** *Mathias H. Heck, Jr.,* Prosecuting Attorney, and *Todd M. Ahearn,* for respondents County Commissioners of Montgomery County, Ohio, Montgomery County Department of Job and Family Services, Children Services Division.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Professionals Guild of Ohio ("Professionals Guild"), brings this mandamus action requesting a writ ordering respondent Ohio State Employment Relations Board ("SERB") to vacate the dismissals of three unfair labor practice ("ULP") charges brought by Professionals Guild on behalf of employees of respondent Montgomery County,

Ohio, Department of Job and Family Services, Children Services Division ("Montgomery County").

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined that SERB did not abuse its discretion in dismissing Professionals Guild's ULP charges in SERB case Nos. 2016-ULP-12-0280 and 2017-ULP-06-0107, but that SERB abused its discretion in dismissing the ULP charge in SERB case No. 2017-ULP-09-0169. The magistrate therefore recommends this court grant in part Professionals Guild's request for a writ of mandamus and order SERB to reinstate SERB case No. 2017-ULP-09-0169. Professionals Guild, Montgomery County, and SERB have filed objections to the magistrate's decision.

{¶ 3} Professionals Guild first objects to the magistrate's determination as to SERB case No. 2017-ULP-06-0107. It asserts the magistrate erred in finding that Montgomery County's Family Medical Leave Act ("FMLA") policy, requiring concurrent consumption of FMLA leave, was both in effect since 2002 and not an unfair labor practice, and in generally concluding that SERB did not abuse its discretion in dismissing the ULP charge in this case. Second, Professionals Guild contends the magistrate erred in concluding SERB did not abuse its discretion in dismissing the ULP charge in SERB case No. 2016-ULP-12-0280 because the magistrate improperly required proof that a reduction in contractual rights is required to establish a ULP as to Montgomery County's unilateral change to a different FMLA leave accrual calculation method. Professionals Guild's third objection generally alleges the magistrate erred in not reviewing the entire record as to SERB case Nos. 2016-ULP-12-0280 and 2017-ULP-06-0107. Conversely, Montgomery County and SERB object to the magistrate's conclusion that SERB abused its discretion in dismissing Professionals Guild's ULP charge in SERB case No. 2017-ULP-09-0169. Montgomery County and SERB argue SERB properly found no probable cause to support the allegations of a ULP in this case.

{¶ 4} In addressing these objections, we analyze the three SERB cases at issue in sequential order. In December 2016, Professionals Guild filed a ULP charge, assigned SERB case No. 2016-ULP-12-0280, alleging Montgomery County unilaterally changed the

method for establishing the 12-month period used to determine FMLA leave accrual without first bargaining this issue with Professionals Guild as required under Ohio law. SERB dismissed this ULP charge based on its determination that there was no probable cause to believe Montgomery County violated R.C. 4117.11. SERB found that Professionals Guild failed to provide sufficient information or documentation to show that a change in the method used to calculate available FMLA leave affected the hours, wages, or terms and conditions of employment for its members. SERB therefore concluded Professionals Guild had no right to bargain this issue. Professionals Guild requested reconsideration, which SERB denied.

{¶ 5} According to Professionals Guild, SERB abused its discretion in not finding probable cause to believe that Montgomery County had violated R.C. 4117.11 by not bargaining the FMLA leave calculation method issue. FMLA entitles an eligible employee with a serious medical condition a total of 12 weeks of unpaid leave during a 12-month period. 29 U.S.C. 2612(a)(1). The method of calculating the accrual of these 12 weeks of leave is at the discretion of the employer. FMLA permits employers to choose one of four methods in computing an employee's available FMLA leave during a 12-month period: (1) the calendar year; (2) any fixed and designated leave year, such as a fiscal year or anniversary year based on an employee's hire date; (3) a 12-month period "measured forward" from an employee's first day of leave taken; or (4) a "rolling" 12-month period "measured backward" from the date an employee uses any FMLA leave. 29 C.F.R. 825.200(b). While an employer may choose any one of the four outlined calculation methods, the method chosen must be applied consistently and uniformly to all employees, and it may be changed only if at least 60 days' notice is given. 29 C.F.R. 825.200(d)(1). Additionally, "the transition must take place in such a way that the employees retain the full benefit of 12 weeks of leave under whichever method affords the greatest benefit to the employee." 29 C.F.R. 825.200(d)(1).

{¶ 6} Here, it is undisputed Montgomery County used the "measured forward" method for calculating employee FMLA leave until October 3, 2016. On October 3, 2016, Montgomery County began using the "measured backward" calculation method. In its December 2016 ULP charge, Professionals Guild claimed Montgomery County improperly made this change without bargaining the issue. SERB found that Professionals Guild failed

to show it had a right to bargain this issue. In addressing this issue, the magistrate found that Montgomery County complied with federal requirements regarding the change in calculation method, and Professionals Guild has identified no reduction in contractual rights based on this change. The magistrate further found that Professionals Guild also did not identify prior negotiation on this issue or any language in pertinent collective bargaining agreements addressing the terms of FMLA leave. The magistrate therefore concluded that SERB did not abuse its discretion in dismissing Professionals Guild's December 2016 ULP charge. While we disagree with Professionals Guild's assertion that the magistrate did not review the entire record, we agree the magistrate reached the wrong conclusion as to this charge.

{¶ 7} R.C. Chapter 4117 "establishe[s] a comprehensive framework for the resolution of public-sector labor disputes by creating a series of new rights and setting forth specific procedures and remedies for the vindication of those rights." *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167, 169 (1991). As pertinent here, it is a ULP for a public employer to "[r]efuse to bargain collectively" with its employees' representative. R.C. 4117.11(A)(5); *see* R.C. 4117.12(A) (a violation of R.C. 4117.11 constitutes a ULP and is remediable by SERB).

{¶ 8} R.C. 4117.08(A) requires a public employer to bargain with the exclusive representative as to "[a]ll matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement, * * * except as otherwise specified in this section." *See also* R.C. 4117.08(C)(9) (unless otherwise provided for in a collective bargaining agreement, a public employer "is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment, and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement"). A determination whether a public employer's unilateral action "affects wages, hours, terms and conditions of employment" within the meaning of R.C. 4117.08 "is generally a factual question * * * properly determined by SERB, which was designated by the General Assembly to facilitate an amicable, comprehensive, effective labor-management relationship between public employees and employers." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260 (1988). When

a party files a ULP charge with SERB, SERB or its designated agent must investigate the charge and determine if there is "probable cause for believing that a violation has occurred." R.C. 4117.12(B).

{¶ 9} We find SERB unreasonably found Professionals Guild did not meet its burden in establishing probable cause that a ULP occurred when Montgomery County unilaterally changed the method for calculating FMLA leave during a 12-month period without bargaining the issue with Professionals Guild. At issue is whether SERB abused its discretion in finding Professionals Guild failed to show that this change affected the "hours, wages, or terms and conditions of employment" for its members. For the purpose of analyzing the effect of this change, it is inconsequential that the method of calculating FMLA leave had not been negotiated previously or that the change complied with federal law.

{¶ 10} Montgomery County's decision to change the FMLA leave calculation method will substantively impact the timing of leave accrual for employees Professionals Guild represents. The "measured forward" and "measured backward" methods have differing characteristics, and depending on which one is chosen, affect an employee's eligibility to take leave on a particular date. For example, unlike the measured forward method, the measured backward method precludes the possibility of an employee taking 11 weeks of leave at the end of a one-year period and then immediately taking another 12 weeks of leave to begin the next one-year period. By changing the method for calculating FMLA leave, Montgomery County changed the wages, hours, or terms and other conditions of employment for the employees represented by Professionals Guild. Consequently, Professionals Guild demonstrated the existence of probable cause that Montgomery County committed a ULP by not bargaining this issue. Thus, SERB abused its discretion in dismissing Professionals Guild's December 2016 ULP charge. We sustain Professionals Guild's objection to the magistrate's contrary conclusion.

{¶ 11} In June 2017, Professionals Guild filed a ULP charge, assigned SERB case No. 2017-ULP-06-0107, alleging Montgomery County improperly retroactively applied FMLA leave to run concurrently with a period of contractual leave already used by an employee. Professionals Guild asserted the bargaining unit employees always had been permitted to elect whether to use FMLA leave. As to this ULP charge, SERB determined that no probable

cause existed to believe Montgomery County violated R.C. 4117.11. SERB found that Professionals Guild did not submit any documentation or identify any contractual language supporting its position. SERB further found that Montgomery County identified its FMLA policy regarding the application of FMLA leave in conjunction with contractual leave. SERB noted its finding that this policy had been in effect since 2002 and there had been no change. Therefore, in August 2017, SERB dismissed Professionals Guild's June 2017 ULP charge. Professionals Guild moved for reconsideration, but SERB denied that request.

{¶ 12} In his decision, the magistrate noted that, under federal law, an employer may run contractual paid leave concurrent with unpaid FMLA leave, and that the application of the FMLA leave may be applied retroactively. The magistrate found that, during SERB's investigation, Professionals Guild did not rebut Montgomery County's document supported assertion that it has had a policy since at least 2002 under which FMLA leave must run concurrently with all other county leave benefits. Thus, the magistrate concluded that SERB did not abuse its discretion in dismissing Professionals Guild's June 2017 ULP charge.

{¶ 13} According to Professionals Guild, an employer cannot apply FMLA leave if an employee declines that application, and it rebutted Montgomery County's assertion of a concurrent FMLA policy in effect since at least 2002. The gravamen of this ULP charge is that Montgomery County improperly did not permit an employee to decline to designate certain leave as FMLA leave, and that this action deviated from Montgomery County's previous policy of permitting such an election. Professionals Guild argues the magistrate erred in not finding these assertions to be supported in the record. Relatedly, it argues the magistrate did not review the entire record before the court, resulting in the erroneous conclusion. We disagree.

{¶ 14} We are not persuaded by Professionals Guild's argument that Montgomery County was required to permit the employee to elect to defer the use of FMLA leave. Pursuant to 29 C.F.R. 825.220 "[e]mployees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA." Thus, once an eligible employee communicates to the employer of the need to take leave for an FMLA-qualifying reason, neither the employee nor the employer may decline FMLA protection for that leave. Additionally, "[o]nce the employer has acquired knowledge that the leave is being taken for

a FMLA-qualifying reason, the employer must notify the employee as provided in [29 C.F.R.] 825.300(d)." 29 C.F.R. 825.301(a). FMLA leave may be retroactively designated, assuming the failure to timely designate does not injure the employee. 29 C.F.R. 825.301(d). Thus, the magistrate correctly rejected Professionals Guild's argument that Montgomery County was not permitted to retroactively run FMLA leave concurrently with contractual leave despite the employee's preference to delay the usage of FMLA leave.

{¶ 15} We also are unpersuaded by Professionals Guild's challenge to the magistrate's finding that it did not rebut Montgomery County's assertion that it has had an FMLA leave policy requiring concurrent use of FMLA leave and contractual leave in effect since 2002. In response to Professionals Guild's ULP charge, Montgomery County submitted evidence to the SERB investigator that it has had a policy since 2002 that FMLA leave runs concurrently with any other contractual leave. In objecting to the magistrate's decision, Professionals Guild asserts the Montgomery County policy that was effective since 2002 did not apply to the employees it represents, that the policy remained inapplicable to them even after Montgomery County became their employer in 2007, and that the employees were permitted to choose when to use FMLA leave until 2016. Professionals Guild made these same assertions before SERB in support of its motion for reconsideration.

{¶ 16} The charging party bears the initial burden of establishing probable cause that an unfair labor practice has occurred. *State ex rel. Fuller v. State Emp. Relations Bd.*, 193 Ohio App.3d 272, 2011-Ohio-1599, ¶ 28 (10th Dist.). But the SERB investigator noted that Professionals Guild "did not provide any documentation or point[] to any contractual language that supports their position" that an employee may elect to have FMLA leave run consecutively to contractual leave. (Stipulation of Evidence at 20968-I25.) Because Professionals Guild did not meet this burden, SERB dismissed the charge. In response to this dismissal, Professionals Guild submitted evidence with its motion for reconsideration that, according to it, supported its position that Montgomery County's policy concerning the use of FMLA leave and contractual leave did not apply to them until 2016. The motion for reconsideration, however, did not point to any obvious error in SERB's analysis as it related to the information that had been submitted as part of the investigation. Nor did the submission preclude SERB from deciding not to reconsider its earlier reliance on the evidence that Montgomery County had submitted as part of SERB's investigation. Thus,

Professionals Guild fails to show that SERB abused its discretion in denying Professionals Guild's motion for reconsideration. And simply because the magistrate did not expressly analyze Professionals Guild's motion for reconsideration filing does not mean it was not considered in reaching his conclusion.

{¶ 17} For these reasons, we reject Professionals Guild's arguments concerning the magistrate's recommendation as to its June 2017 ULP charge.

{¶ 18} In September 2017, Professionals Guild filed a ULP charge, assigned SERB case No. 2017-ULP-09-0169, alleging Montgomery County had unilaterally changed its policy regarding FMLA recertification from an annual requirement to a biannual requirement without bargaining the issue. Based on its investigation of this ULP charge, SERB found that Professionals Guild did not show how the "now-twice yearly FMLA re-certification requirement has affected its members' wages, hours or terms and conditions of employment," that Professionals Guild "did not provide any correlation between the contractual language it believes supports their position and that of the FMLA re-certification requirement language," and that "the parties' Collective Bargaining Agreement is silent regarding FMLA guidelines and/or requirements." (Stipulation of Evidence at 20968-N46.) Finding no probable cause to believe Montgomery County violated R.C. 4117.11, SERB dismissed the September 2017 ULP charge.

{¶ 19} As to the dismissal of the September 2017 ULP charge, the magistrate found that while Montgomery County's change in the recertification policy was permissible under the FMLA, and even though the parties' collective bargaining agreement did not address this issue, it presents a change in the terms and conditions of employment. The magistrate therefore concluded that SERB abused its discretion in dismissing this ULP charge because Professionals Guild established probable cause and the charge warranted further inquiry. Montgomery County and SERB object to this conclusion. They assert SERB's dismissal of this ULP charge was proper because there existed no probable cause to believe that Montgomery County improperly changed the FMLA recertification requirement. We disagree.

{¶ 20} An employer is permitted to require an employee to submit certification from a health care provider to support the necessity of FMLA leave. Pursuant to 29 C.F.R. 825.305(a), "[a]n employer may require that an employee's leave * * * due to the employee's

own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, be supported by a certification issued by the health care provider of the employee." The employer also may require an employee to submit a recertification. 29 C.F.R. 825.308(b) states: "In all cases, an employer may request a recertification of a medical condition every six months in connection with an absence by the employee."

{¶ 21} In objecting to the magistrate's decision, Montgomery County and SERB argue there is an absence of any policy or agreement altering Montgomery County's right under FMLA law to request recertification every six months. But this argument does not address the alleged change in recertification policy or whether that change affects the terms and conditions of employment. In this regard, Montgomery County and SERB suggest the magistrate erred in finding a significant change in the terms and conditions of employment as a result of the recertification policy change. Montgomery County and SERB contend the magistrate's finding, that the change from annual to biannual recertification places an additional burden on employees, was inappropriate because Professionals Guild cited no evidence demonstrating any change regarding the recertification requirement. But Montgomery County did not make this argument before SERB in response to Professionals Guild's charge. Before SERB, Professionals Guild expressly alleged Montgomery County unilaterally changed its FMLA recertification requirement from annual to biannual without bargaining the issue. As the magistrate noted, in response, Montgomery County argued that requiring biannual recertification did not alter a bargained-for term of employment, and that this recertification requirement was permitted under FMLA regulations. Montgomery County did not, however, refute Professionals Guild's assertion that the employer's policy had changed as to the required frequency of recertifications. Consequently, Montgomery County's attempt to raise this issue in its objections to the magistrate's decision is unavailing.

{¶ 22} Moreover, SERB's decision dismissing Professionals Guild's ULP charge implicitly accepted for the purpose of its analysis that Montgomery County had changed its recertification requirement to every six months, stating that Professionals Guild did not sufficiently show "how the now-twice yearly FMLA re-certification requirement has affected the members' wages, hours or terms and conditions of employment." (Pl's. Ex. 12,

attached to May 10, 2018 Part 3, Exs. to Compl.)  We recognize that SERB's decision also states "[t]he policy regarding FMLA re-certification has been in effect since 2009," but that reference seems to relate to the information Montgomery County submitted to SERB pertaining to the changes made in 2009 to 29 C.F.R. 825.308, which addresses recertifications. Effective January 16, 2009, this rule was amended to eliminate uncertainty as to how often employers may require recertification of chronic conditions by clarifying an employer may request recertification every six months.  *See* 73 Fed. Reg. 67934.  Thus, SERB's decision rejected Professionals Guild's charge that the unilateral change from annual to biannual recertification was a ULP on the basis that Professionals Guild had not shown how that change affected wages, hours, or terms and conditions of employment.

{¶ 23}  We agree with the magistrate's reasoning that, while FMLA law permitted Montgomery County to change its recertification policy to require more frequent recertifications, it was unreasonable for SERB not to find that this change affected the terms and conditions of employment.  The increased recertification frequency requirement places additional burden on employees with chronic conditions.  And the fact that the parties had not previously bargained this issue did not relieve Montgomery County of its obligation to bargain this change in its policy.  Therefore, we concur in the magistrate's conclusion that SERB abused its discretion in dismissing this charge for lack of probable cause.

{¶ 24}  Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined that SERB abused its discretion in dismissing Professionals Guild's ULP charge in SERB case No. 2017-ULP-09-0169, and that SERB did not abuse its discretion in dismissing Professionals Guild's ULP charge in SERB case No. 2017-ULP-06-0107.  As to these SERB cases, the magistrate applied the pertinent law to the salient facts.  However, the magistrate erroneously concluded that SERB did not abuse its discretion in dismissing Professionals Guild's ULP charge in SERB case No. 2016-ULP-12-0280.  Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except as to the magistrate's conclusions of law pertaining to SERB case No. 2016-ULP-12-0280.  We therefore sustain in part and overrule in part Professionals Guild's objections to the magistrate's decision, overrule Montgomery County and SERB's objections to the magistrate's decision, and grant in part Professionals Guild's request for a writ of mandamus.  SERB is ordered to vacate its

dismissals of SERB case Nos. 2016-ULP-12-0280 and 2017-ULP-09-0169 and to issue complaints in those cases.

*Professionals Guild's objections sustained in part and overruled in part;*
*Montgomery County's objections overruled;*
*SERB's objections overruled;*
*writ of mandamus granted in part.*

DORRIAN and NELSON, JJ., concur

## APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Professionals Guild of Ohio, | : | |
| Relator, | : | |
| v. | : | No. 18AP-334 |
| [Ohio] State Employment Relations Board et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 20, 2019

*James E. Melle,* for relator.

*Dave Yost,* Attorney General, *Georgia L. Verlaney,* and *Tracy M. Nave,* for respondent State Employment Relations Board.

*Mathias H. Heck, Jr.,* Prosecuting Attorney, and *Todd M. Ahearn,* for respondents County Commissioners of Montgomery County, Ohio, Montgomery County Department of Job and Family Services, Children Services Division.

### IN MANDAMUS

{¶ 25} In this original action, relator, Professionals Guild of Ohio, requests a writ of mandamus ordering respondent the Ohio State Employment Relations Board ("SERB") to vacate the dismissals of three unfair labor practice ("ULP") charges brought by relator on behalf of employees of the Montgomery County, Ohio, Department of Job and Family Services, Children Services Division, also a named respondent in the case.

Findings of Fact:

{¶ 26} 1. Relator is an employee organization, as defined in R.C. 4117.01(D), which represents a bargaining unit consisting of public employees of Montgomery County, Ohio, Department of Job and Family Services, Children Services Division ("Montgomery County").

{¶ 27} 2. Relator and Montgomery County negotiated a collective bargaining agreement covering the affected employees effective April 1, 2017 through March 31, 2020.

{¶ 28} 3. Relator and Montgomery County were also parties to a predecessor collective bargaining agreement ("CBA") effective April 1, 2014 through March 31, 2017.

{¶ 29} 4. Similar CBAs between relator and Montgomery County cover the period between 2007 and 2014.

{¶ 30} 5. A predecessor employer, Montgomery County Children Services Board ("CS Board"), entered into comparable CBAs with relator before 2007.

{¶ 31} 6. Relator was recognized at all relevant times by Montgomery County and CS Board as the exclusive bargaining representative of the effected professional and non-professional employees as described in the applicable CBAs.

{¶ 32} 7. The CBAs in question contain the following language in a "Safety and Health" section variously numbered between the successive CBAs, and currently found in Article 10, Section 1 of the latest CBA: "In order to have a safe place to work, the Employer agrees to comply with all laws applicable to its operations concerning the safety and health of employees covered by this agreement. All such employees shall comply with all safety and health rules and regulations established by the Employer."

{¶ 33} 8. Relator filed three ULP charges with SERB on behalf of Montgomery County bargaining unit employees.

{¶ 34} 9. All three ULPs involve interaction between The Family and Medical Leave Act ("FMLA"), codified at 29 U.S.C. 2601 et sec. and 29 C.F.R. 825.100 et sec., and the employees' contractual leave rights under the pertinent CBAs.

{¶ 35} 10. Relator filed its first ULP with SERB on December 16, 2016 under SERB case No. 2016-ULP-12-0280. SERB dismissed this ULP on April 20, 2017, and denied relator's motion for reconsideration on July 13, 2017.

{¶ 36} 11. The first ULP asserts that relator's bargaining unit employees are entitled to 12 weeks of FMLA leave in any 12-month period pursuant to 29 U.S.C. 2612(a)(1) and 29 CFR 825.200(a). Prior to October 3, 2016, Montgomery County and its predecessor, the CS Board, used a "measured forward" method for establishing the 12-month period in which the 12-week entitlement arises under 29 C.F.R. 825.200(b), but that after October 3, 2016, Montgomery County unilaterally changed this method to a "measured backward" method under the same section.

{¶ 37} 12. SERB ruled that an employer may change the method of calculation for FMLA accrual, that Montgomery County had properly done so when it switched to a third-party administrator for FMLA leave management, and relator had failed to show that it had a right to bargain this issue.

{¶ 38} 13. Relator filed its second ULP charge on June 15, 2017 under case No. 2017-ULP-06-0107. SERB dismissed this ULP on August 24, 2017.

{¶ 39} 14. The second ULP concerned an employee who submitted a request to use contractual sick, vacation, and personal leave under the CBA then in force. This leave was necessary to cover for a medical condition that required her absence from work. The employee did not request FMLA leave for this absence, desiring to reserve it for later use if needed. Montgomery County approved the use of contractual leave, and later approved two weeks of FMLA leave requested by the employee to extend her approved absence.

{¶ 40} 15. When approving the additional 2 weeks of FMLA leave, Montgomery County applied 10 weeks of FMLA leave retroactively to run concurrently with the period of contractual leave already used by the employee, thus exhausting the employee's entire FMLA leave for the 12-month period.

{¶ 41} 16. In dismissing the second ULP, SERB determined that no probable cause existed to believe that Montgomery County had violated R.C. 4117.11 by committing a ULP. SERB determined the union had failed to provide documentation, contractual language, or other authority to establish there had been a change in Montgomery County's

FMLA policy regarding the imposition of mandatory FMLA leave running concurrently with approved contractual leave.

{¶ 42} 17. Relator filed a third ULP on September 25, 2017 under SERB case No. 2017-ULP-09-0169. This was dismissed by SERB on November 16, 2017.

{¶ 43} 18. The third ULP asserts that Montgomery County improperly and unilaterally changed policy to require more frequent recertifications of medical necessity when approving FMLA leave.

{¶ 44} 19. Under 29 U.S.C. 2613(e), an employer may require recertifications on a "reasonable basis" depending on circumstances.

{¶ 45} 20. The employer may request recertification no more often than every 30 days, or, for durable medical conditions, every 6 months. 29 C.F.R. 825.308(a) and (b). However, the employer may set longer recertification dates. *Id.*

{¶ 46} 21. The third ULP asserts that for approximately 20 years under CS Board and, subsequently, Montgomery County policy, the employer required a physician's recertification of a serious health condition and explanation for FMLA leave, required by 29 U.S.C. 2613(a) and (b), after one year.

{¶ 47} 22. The third ULP then states that relator learned on June 28, 2017 that Montgomery County would unilaterally decrease the interval of recertifications from one year to six months, and Montgomery County subsequently refused to bargain the issue. Relator asserts that a twice-yearly recertification imposes a greater cost upon employees compared to a yearly recertification, in the form of time off work and medical expenses.

{¶ 48} 23. In dismissing the third ULP, SERB stated that no probable cause existed to believe that a violation of R.C. 4117.11(A) occurred because the change in recertification time did not affect the employee's wages, hours, or terms and conditions of employment, and was not a bargained-for condition of employment under the CBA.

{¶ 49} 24. Relator filed the present complaint in mandamus on May 10, 2018 asserting that SERB's determination in each of the three ULP cases that no probable cause existed to pursue the ULP charges was an abuse of discretion, erroneous, and contrary to law. The complaint in mandamus states that SERB has a clear legal duty to find in each ULP case that sufficient evidence was presented by fact and legal authority to support a

finding of probable cause, and SERB should issue a ULP complaint in each, and set the cases for hearing.

{¶ 50} 25. Relator requests this court issue a writ of mandamus compelling SERB to vacate the denial of relator's motions for reconsideration in two of the ULP cases, and the dismissals of all ULP cases, reinstate the cases, and pursue them as outlined above.

Discussion and Conclusions of Law:

{¶ 51} In order for this court to issue a writ of mandamus, relator must show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 52} Pursuant to R.C. 4117.12(B), when a party files a charge with SERB alleging that a ULP has been committed, "the board or its designated agent shall investigate the charge." If the board finds probable cause to believe that a ULP violation occurred, it shall issue a complaint to conduct a hearing. *Id.* There is no direct avenue of appeal from this determination. *Ohio Assoc. of Pub. School Emps., Chapter 643, AFSCME/AFL-CIO v. Dayton City School Dist. Bd. of Edn.,* 59 Ohio St.3d 159, 161 (1991). The proper means by which to challenge SERB's dismissal of a ULP charge for lack of probable cause is through a mandamus action. *State ex rel. Serv. Emps. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.,* 81 Ohio St.3d 173 (1998), syllabus. The court will determine whether SERB abused its discretion in dismissing the ULP charge. *State ex rel. Leigh v. State Emp. Relations Bd.,* 76 Ohio St.3d 143, 145 (1996). In this context, the term "abuse of discretion" means that SERB's decision is unreasonable, arbitrary, or unconscionable. *Id.*, citing *State ex rel. Brenders v. Hall,* 71 Ohio St.3d 632, 637 (1995).

{¶ 53} The Supreme Court of Ohio has acknowledged the deference due to the specialized administrative expertise required of SERB: "It was clearly the intention of the Ohio General Assembly to vest the Ohio State Employment Relations Board with broad authority to administer and enforce the Ohio Public Employees' Collective Bargaining Act, [R.C. Chapter 4117.] This authority must necessarily include the power to interpret the Act to achieve its purposes." (Citations omitted.) *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260 (1988).

{¶ 54} R.C. 4117.11(A) specifies certain acts of employers or employee representatives that constitute ULPs:

> (A) It is an unfair labor practice for a public employer, its agents, or representatives to:
>
> (1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;
>
> * * *
>
> (5) Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code.

{¶ 55} R.C. 4117.12(B) states means by which SERB shall enforce the above provisions:

> When anyone files a charge with [SERB] alleging that an unfair labor practice has been committed, [SERB] or its designated agent shall investigate the charge. If [SERB] has probable cause for believing that a violation has occurred, [SERB] shall issue a complaint and shall conduct a hearing concerning the charge.

{¶ 56} Because R.C. Chapter 4117 does not define the term "probable cause," courts have afforded the term its ordinary definition as used in other areas of the law. *State ex rel. Portage Lakes Edn. Assoc., OEA/NEA v. State Emp. Relations Bd.,* 95 Ohio St.3d 533, 2002-Ohio-2839, ¶ 37. R.C. 4117.12(B) requires SERB to "issue a complaint and conduct a hearing on an [ULP] if, following an investigation, [SERB] has a reasonable ground to believe that an [ULP] has occurred." *Id.* at ¶ 38. A charging party bears the initial burden in establishing probable cause that a ULP has occurred. *State ex rel. Fuller v. State Emp. Relations Bd.,* 10th Dist. No. 10AP-630, 2011-Ohio-1599, 272, 282, ¶ 28.

{¶ 57} Relator's first ULP charge addresses Montgomery County's unilateral decision to implement a different method for determining the applicable leave year when computing FMLA leave availability for employees.

{¶ 58} The FMLA, 29 U.S.C. 2601 at sec., provides for unpaid leave up to 12 weeks in a 12-month period for employees with a serious medical condition. 29 U.S.C. 2612(a)(1). These 12 weeks of leave may be taken continuously in one block of time, or intermittently when medically necessary. 29 U.S.C. 2612(b)(1). The FMLA allows employers some flexibility in calculating the 12-month period applicable when computing available FMLA leave for an employee. The employer may choose between four options: (1) the calendar year; (2) any fixed and designated leave year, such as a fiscal year or anniversary year based on employee's hire date; (3) a 12-month period counting forward from an employee's first day of leave taken; or (4) a rolling 12-month period measured backward from the date an employee uses any FMLA leave. 29 C.F.R. 825.200(b); *Hill v. Underwood Mem. Hosp.,* 365 F.Supp.2d 602, (D.N.J. 2005). Application of the various methods is further detailed in the ensuing regulations:

> Under methods in paragraphs (b)(1) and (b)(2) of this section an employee would be entitled to up to 12 weeks of FMLA leave at any time in the fixed 12-month period selected. An employee could, therefore, take 12 weeks of leave at the end of the year and 12 weeks at the beginning of the following year. Under the method in paragraph (b)(3) of this section, an employee would be entitled to 12 weeks of leave during the year beginning on the first date FMLA leave is taken; the next 12-month period would begin the first time FMLA leave is taken after completion of any previous 12-month period. Under the method in paragraph (b)(4) of this section, the "rolling" 12-month period, each time an employee takes FMLA leave the remaining leave entitlement would be any balance of the 12 weeks which has not been used during the immediately preceding 12 months. For example, if an employee has taken eight weeks of leave during the past 12 months, an additional four weeks of leave could be taken. If an employee used four weeks beginning February 1, 2008, four weeks beginning June 1, 2008, and four weeks beginning December 1, 2008, the employee would not be entitled to any additional leave until February 1, 2009. However, beginning on February 1, 2009, the employee would again be eligible to take FMLA leave, recouping the right to take the leave in the same manner and amounts in which it was used in the previous year. Thus, the employee would recoup (and be entitled to use) one additional day of FMLA leave each day for four weeks, commencing February 1, 2009. The employee would also begin to recoup additional days beginning on

June 1, 2009, and additional days beginning on December 1, 2009. Accordingly, employers using the rolling 12-month period may need to calculate whether the employee is entitled to take FMLA leave each time that leave is requested, and employees taking FMLA leave on such a basis may fall in and out of FMLA protection based on their FMLA usage in the prior 12 months. For example, in the example above, if the employee needs six weeks of leave for a serious health condition commencing February 1, 2009, only the first four weeks of the leave would be FMLA protected.

{¶ 59} Employers may choose any of the above alternatives, but must provide 60 days notice to employees when switching calculation methods, and "the transition must take place in such a way that the employees retain the full benefit of 12 weeks of leave under whichever method affords the greatest benefit to the employee." 29 C.F.R. 825.200(d)(1).

{¶ 60} Prior to October 2, 2016, Montgomery County used the measured-forward method for computing FMLA leave availability. At that time, Montgomery County contracted with an outside administrator to handle FMLA leave matters. Montgomery County and CareWorks thereafter issued a notice to all employees that FMLA leave would be henceforth calculated under the measured-backwards method. Relator sought to bargain on the issue, Montgomery County refused, and the first ULP ensued.

{¶ 61} In the course of SERB's investigation of the first ULP charge, relator provided examples of the disadvantages of the looking-backward method from the employee's perspective. In gross, this method allows employees to consider FMLA leave as accrued at the beginning of a given period, whereas the looking-backwards method requires a 12-month wait to recoup each day of FMLA leave once taken. Otherwise put, the looking-forward method allows employees to accrue and use leave for a period not yet worked, and the measured-backwards method accrues leave for past service in which leave was not taken. Relator and Montgomery County provided various examples under which the different methods accrue advantages and disadvantages to employees depending on the timing of leave taken. Under the most sharply defined example, an employee could take 23 weeks of continuous FMLA leave under the measured-forward method, which would be impossible under the measured-backward method, which would

impose a 39-week interval before leave could again be used after a 12-week leave period by the employee.

{¶ 62} Relator argued before SERB that a change in FMLA policy must be bargained-for, citing the National Labor Relations Board ("NLRB") case, *Verizon North, Inc. and International Brotherhood of Electrical Workers Local 1637,* NLRB No. 6-C-84-35379, 352 N.L.R.B. 1022 (July 31, 2008) and a SERB opinion, *Professionals Guild of Ohio v. Lucas Cty. Children Serv. Bd.,* SERB case No. 09-ULP-06-0321 (Sept. 3, 2009). Montgomery County responded that the method of computing 12-month FMLA leave was not a bargainable issue because it involved neither wages, hours, or terms and conditions of employment.

{¶ 63} Although relator strives to characterize the FMLA as a health and safety law subject to Article 10, Section 1 of the CBA as set forth above, the magistrate finds this is not conclusive. Assuming, arguendo, that the FMLA is a health and safety law (SERB asserts that it is not, as it falls under the "labor" section of the United States Code), Article 10, Section 1 only requires Montgomery County to *comply* with federal laws and regulations, which it has done by giving the requisite notice when switching between two permissible methods of calculating FMLA leave and ensuring that employees receive the full benefit of the prior method during the transition period.

{¶ 64} The magistrate further finds the NLRB case of *Verizon North*, cited by relator, does not provide guidance in the present case. The NLRB decision in that case noted that parties had previously negotiated terms of the FMLA leave in the terms of their labor agreement. Relator is unable to point to a similar history of negotiation, let alone specific language in the current or past CBAs, regarding the terms of FMLA leave. While 29 U.S.C. 2652(a) provides that nothing in the FMLA "shall be construed to diminish the obligation of an employer to comply with [a labor agreement] or any employment benefit program or plan that provides greater * * * leave rights to employees than the rights established under [the act]," relator identifies no reduction in contractual rights here.

{¶ 65} The magistrate accordingly concludes that SERB did not abuse its discretion in dismissing relator's first ULP charge.

{¶ 66} The second ULP charge in this matter addresses Montgomery County's designation of an employee's approved contractual leave as concurrently consuming FMLA leave:

> Generally, FMLA leave is unpaid leave. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute accrued paid leave for FMLA leave. If an employee does not choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for unpaid FMLA leave. The term 'substitute' means that the paid leave provided by the employer, and accrued pursuant to establish policies of the employer, will run concurrently with the unpaid FMLA leave.

29 C.F.R. 825.207(a). The FMLA regulations, therefore, "clarify an employee's rights and responsibilities under the Act, including an allowance for employers to run paid leave programs concurrent with unpaid FMLA leave." *Allen v. Butler Cty. Comm.,* 331 Fed. Appx. 389 (6th Cir.2009).

{¶ 67} Consistently with the concurrent leave principle expressed above, 29 C.F.R. 825.301 provides for retroactive designation of leave as FMLA leave: "Retroactive designation. If an employer does not designate leave as required * * *, the employer may retroactively designate leave as FMLA leave with appropriate notice to the employee as required by [29 C.F.R. 825.300] provided that the employer's failure to timely designate leave does not cause harm or injury to the employee." 29 C.F.R.825.301(d).

{¶ 68} Relator did not rebut Montgomery County's assertion that it has had a policy in place since at least 2002 under which FMLA leave would run concurrently with all other county leave benefits. While relator cites the case of *In re Twp. of Parsippany-Troy Hills,* 419 N.J. Super. 512, 17 A.3d. 834 (N.J. App. 2011), that case is distinguishable in several respects. In *Parsippany*, the employer demanded a completed FMLA certification form from the employee requesting contractual leave and threatened suspension if the employee did not comply. The reasoning in *Parsippany* also implies that, on the facts before the court, the concurrent use of FMLA leave was governed by the union's employment contract, and the parties had agreed that the issue would be resolved through a contractual grievance procedure. *Parsippany* at 526, footnotes one and two.

{¶ 69} Because Montgomery County's evidence regarding a long-standing policy requiring concurrent consumption of FMLA and contractual leave was unrebutted by relator during the SERB investigation, the magistrate concludes that this permissible imposition of concurrent leave consumption by Montgomery County on an employee was not a ULP, and SERB did not abuse its discretion in dismissing relator's ULP charge.

{¶ 70} In the third ULP, addressing Montgomery County's change in the FMLA recertification requirement for employees, Montgomery County again asserted in response to the charge that the change from annual to twice-yearly certification did not alter a bargained-for term of employment. Montgomery County also stressed the new certification requirement was expressly permissible under FMLA regulations. 29 C.F.R. 825.308(b) provides in part: "[A]n employer may request a recertification of a medical condition every six months in connection with an absence by the employee." Pursuant to 29 C.F.R. 825.305(b), the employee must then provide the employer with a complete and sufficient certification within 15 days of an employer's request for certification.

{¶ 71} The magistrate first notes that Montgomery County dismisses as mere speculation relator's assertion that more frequent recertification will impose an additional burden on employees in the form of time off work and possible medical fees. Relator's position in this respect is in no way speculative. 29 C.F.R. 825.308(f) provides, "Any recertification requested by the employer shall be at the employee's expense unless the employer provides otherwise." The concomitant additional burden on employees in the form of leave consumption or unpaid time off is self-evident.

{¶ 72} While Montgomery County's change in recertification policy is permissible under the FMLA, the magistrate concludes that it presents a significant change in terms and conditions of employment. Although relator cannot point to a specific provision in the CBA governing FMLA certification, provision of a CBA language on every detail of employment is unnecessary. The magistrate concludes this significant change warranted further inquiry by SERB on the ULP charge before dismissal, and that SERB abused its discretion in dismissing relator's third ULP.

{¶ 73} In summary, the magistrate finds that SERB did not abuse its discretion in dismissing the ULP charges in SERB cases 2016-ULP-12-0280 and 2017-ULP-06-0107,

but the dismissal in SERB case 2017-ULP-09-0169 was unwarranted and an abuse of discretion.  It is the magistrate's decision that relator has established in part that SERB abused its discretion, and it is the magistrate's decision that the court grant in part relator's request for a writ of mandamus as outlined above, ordering SERB to reinstate SERB case 2017-ULP-09-0169.


                                                            /S/ MAGISTRATE
                                                            MARTIN L. DAVIS


### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).